# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTTISH AMERICAN | : | CIVIL ACTION |
| GENERAL INSURANCE AGENCY, | : | |
| INC., | : | NO. 22-2555 |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| SERGIO RICCIARDI, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                              FEBRUARY 18, 2025

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Scottish American General Insurance Agency, Inc. ("Plaintiff" or "Scottish American") asserts various contract-based claims against its former employees, Defendants Sergio Ricciardi ("Ricciardi") and Kimberly Garlock ("Garlock"), and their current employer, Defendant USG Insurance Services, Inc. ("USG"), premised on Ricciardi and Garlock's alleged breach of restrictive covenants in their respective employment agreements. Before this Court are the parties' cross-motions for summary judgment, in which the parties' contest the enforceability and interpretation of the restrictive covenants and whether Ricciardi and Garlock breached those provisions. The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth herein, the parties' cross-motions for summary judgment are denied, and this matter will be scheduled for a bench trial.

### BACKGROUND

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The facts relevant to the underlying motions are summarized as follows:[1]

Scottish American sells and provides insurance products and services across a variety of business and industries through its team of agents. As a wholesale insurance broker, Scottish American cannot communicate directly with insureds as a matter of licensing. As a result, Scottish American's most important relationships are those it maintains with the retail insurance agents and brokers who can connect them to insureds, making those agents and brokers Scottish American's true customers.

Ricciardi joined Scottish American in March 2018 as a Producer/Underwriter. Garlock joined at about the same time as an Assistant Underwriter. As a Producer/Underwriter, Ricciardi marketed insurance products to retail agents or brokers. Garlock served as an assistant to Ricciardi. She did not make sales communications to agents or brokers beyond forwarding them quotes, and she played no role in soliciting new agent or broker relationships.

At the inception of their employment with Scottish American, Ricciardi and Garlock executed written employment agreements (collectively, the "Employment Agreements"). Their Employment Agreements contained identical post-employment restrictive covenants, which provide, in relevant part:

The Employee expressly recognizes that the terms and conditions of this paragraph are reasonable as to scope, time, and area and are necessary to protect the legitimate interest of Scottish American and are not harmful to the public nor unduly burdensome to the Employee. As additional consideration for Scottish American to enter into this agreement the Employee agrees that they will not, for a period of eighteen (18) months after termination of the agreement:

a.    Directly or indirectly solicit any active policy placed by Scottish American as of the date of termination of the agreement;

b.    Directly or indirectly solicit or accept any renewal of any existing policy placed by Scottish American as of the date of termination of the agreement;

c.    Directly or indirectly accept placement of any policy involving any existing or active file of Scottish American as of the date of the termination of the agreement, even in the event an unsolicited Broker of Record or Agency of Record letter is received;

---

[1]    These facts are taken from the parties' briefs, exhibits, and statements of facts. To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in the non-movant's favor pursuant to Federal Rule of Civil Procedure ("Rule") 56.

     d.       Divulge, publish or otherwise disclose either directly or indirectly to any person, firm, corporation, association or other entity for any reason or purpose whatsoever any confidential information or trade secrets of Scottish American or its clients;

     e.       Directly or indirectly contact any insurance carrier relative to any active policy of Scottish American or in connection with any renewal of an existing policy or the placement of any policy involving any existing or active file of Scottish American as of the date of termination of the agreement;

     f.       Directly or indirectly seek to recruit or induce any Employee to leave the employ of Scottish American for any reason whatsoever; and

     g.       Directly or indirectly contact, deal with or transact any business with any broker or agents with whom there was any contact, communications or business transacted with or on behalf of Scottish American.

***

Nothing in this section is intended to prohibit the Employee from engaging in the insurance business upon termination of their employment with Scottish American; however that in doing so as herein set forth more fully in this section, the Employee does not solicit or contact any past or present broker or customer of Scottish American in respect to any existing policy or active file as of the date of termination or divulge, publish, reveal, or otherwise use for their benefit the confidential information or trade secrets of Scottish American.

It is expressly agreed that if any portion of this section is held to be unenforceable in any respect then the remaining portions shall be enforced to the maximum extent permitted by law and such enforceability shall not affect any other portion of this section or this agreement.

In exchange for agreeing to the terms in the Employment Agreements, both Ricciardi and Garlock received consideration in the form of their initial employment with Scottish American, including compensation and benefits. Scottish American also gave them both access to its confidential information, including, *inter alia*, customer lists, policy information, and contact information for agents and brokers. Scottish American also entrusted Ricciardi with existing relationships with agents and brokers by transitioning them to Ricciardi's care.

3

Garlock reported directly to Ricciardi throughout her employment, and the two of them worked as a team. Ricciardi was primarily responsible for sales, and Garlock was tasked with supporting the agents and brokers with whom Ricciardi worked on behalf of Scottish American.

In February of 2022, unhappy with Scottish American for a variety of reasons, Ricciardi began searching for other employment. In April of 2022, Jennifer Kessel, USG's Vice President of Operations, reached out to Ricciardi about the prospect of Ricciardi working at USG. Ricciardi interviewed with Ms. Kessel and Tim Horton, President of USG, and on April 29, 2022, accepted an offer of employment from USG as a Producer/Broker: Team Lead. On May 6, 2022, Ricciardi submitted his resignation to Scottish American effective May 20, 2002. However, Scottish American terminated him immediately upon receipt of the notice. Ricciardi began his employment with USG on May 23, 2022.

In April of 2022, unhappy with her role at Scottish American, Garlock decided to leave Scottish American. A USG recruiter identified Garlock as a potential candidate for hire, independent from USG's eventual hiring of Ricciardi. After an interview process, USG offered Garlock a position as a Production Assistant. Garlock submitted her resignation to Scottish American on May 2, 2022, and began working at USG shortly thereafter. Ricciardi did not solicit or encourage Garlock to leave Scottish American or to join USG.

Scottish American and USG are direct competitors in the wholesale insurance industry and often compete for the same business. Like Scottish American, USG also markets itself directly to retail agents and brokers and depends on them for its business. Both Ricciardi and Garlock's roles at USG are essentially identical to those they held at Scottish American.

Prior to the commencement of their employment with USG, Ricciardi and Garlock informed USG of their Scottish American employment agreements and the restrictive covenants therein. Ms. Kessel and Mr. Horton of USG reviewed the agreements. Based on their review, they advised Ricciardi that he would not be permitted to solicit or accept business that was on the books with Scottish American, but that he would be permitted to solicit or accept new business received from agents and brokers.

Since leaving Scottish American, Ricciardi has done business with over two dozen different retail agents and/or brokers with whom he worked during his employment at Scottish American.

## LEGAL STANDARD

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings"

and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion; the court rules "on each party's motion on an individual and separate basis, determining, for each side, whether summary judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citation and internal quotation marks omitted).

**DISCUSSION**

As noted, Defendants Ricciardi and Garlock challenge the enforceability of the restrictive covenants in their respective employment agreements. Though the restrictive covenants are the same, they are subject to different choice-of-law provisions: Ricciardi's employment agreement contains a New York choice-of-law provision; Garlock's employment agreement contains a Pennsylvania choice-of-law provision. Because the parties have provided no basis to disregard either choice-of-law provision, this Court will address each provision separately under the applicable state law.[2]

### *Enforceability of Ricciardi Restrictive Covenant*

Under New York law, restrictive covenants, like that in Ricciardi's employment agreement, must be reasonably limited in time, scope, and geographical area, and be grounded in

---

[2]     Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they sit. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 388, 343 (3d Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Accordingly, this Court must apply Pennsylvania choice-of-law rules in this case. Under Pennsylvania law, courts generally honor the intent of the contracting parties and enforce choice-of-law provisions in contracts executed by them. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Though given an opportunity to address this issue, neither party has provided any reason to stray from this general rule.

a legitimate business purpose. *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 369 (N.Y. 2015). An employer bears the burden of demonstrating the restriction is enforceable. *Id.* at 369-70. Such restraints are deemed reasonable:

> "only if it: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. A violation of any prong renders the covenant invalid."

*Id.* at 369 (internal citations omitted). Applying this test, New York courts have held a restrictive covenant is overbroad where it prohibits a former employee from working with any of the employer's customers, including those with whom the employee never met or for whom the employee never performed services. *Id.* at 370-71. "[C]ourts applying New York law do typically treat *BDO Seidman* as something of a brightline rule." *Spotlight Ticket Mgmt., Inc., v. Daigle*, 2024 WL 3966900, at *9 (S.D.N.Y. Aug. 28, 2024); *see also Permanens Capital L.P. v. Bruce*, 2022 WL 3442270, at *11 (S.D.N.Y. July 22, 2022) (holding that restrictive covenant barring a former employee from dealing with the employer's "entire client base" was "overbroad"); *QBE Americas, Inc. v. Allen*, 2022 WL 889838, at *14 (S.D.N.Y. Mar. 25, 2022) (similar); *Good Energy, L.P. v. Kosachuk*, 853 N.Y.S.2d 75, 77 (N.Y. App. Div. 2008) ("[T]he covenant not to compete is unreasonable because it purports to prohibit defendant from dealing with Good Energy's entire client base, thus including not only those clients or customers that had been created and maintained at Good Energy's expense, but also those clients that were not serviced by defendant during his tenure at Good Energy").

Here, a simple reading of the restrictive covenant in Ricciardi's employment agreement shows that it extends to *all* of Plaintiff's business and relationships with agents and brokers, regardless of whether Ricciardi had any contact or relationship with those agents or brokers before

or during the course of his employment with Plaintiff.  Under the above applicable New York law, the restrictive convent's broad scope is impermissible.

Under New York law, however, the analysis does not end there; New York law permits courts to narrow the scope of restrictive covenants to render them enforceable, *i.e.*, to "blue pencil" them.  *Spotlight*, 2024 WL 3966900, at *10 (relying on *BDO Seidman* and other New York cases permitting such modifications).  "[O]verbroad restrictive covenants are partially enforceable to the extent necessary to protect the employer's legitimate interest."  *Barton Mines Co., L.L.C. v. Miller*, 2014 WL 4437558, at *4 (N.D.N.Y. Sept. 9, 2014) (cleaned up).  However, if a court finds that a restrictive covenant is overbroad, an employer is not entitled to partial enforcement as a matter of right.  *Id.* at *4 n.1.  The *BDO Seidman* court outlined the requirements for blue penciling as follows:

> [A] court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement. Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anticompetitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified.

*BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1226 (N.Y. 1999) (cleaned up).  If this standard is met, a court may modify an otherwise invalid restrictive covenant rather than voiding it in its entirety "to the extent it deems reasonable" "[i]n the circumstances of [the] case."  *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 869 N.Y.S.2d 465, 473 (N.Y. App. Div. 2008); *see also Crye Precision LLC v. Duro Textiles, LLC*, 689 F. App'x 104, 107 (2d Cir. 2017) (describing this practice as "blue penciling").

Notably, Scottish American acknowledges this Court's ability to blue pencil the provision at issue to make it enforceable.  (*See* Pl. Suppl. Br., ECF 71, at p. 8).  Indeed, Scottish American

repeatedly represents that it only seeks to enforce the restrictive covenant as to those agents or brokers with whom Ricciardi worked while under its employ. (*Id.* at pp. 5, 8 n.1). This blue penciling determination, however, is to be made on a case-by-case basis, focusing on the employer's conduct in imposing the terms of the agreement. *BDO Seidman*, 93 N.Y.2d at 394. Here, neither party has presented evidence or argument with respect to Plaintiff's conduct in imposing the terms of the agreement. Thus, such determination must await further development of the evidentiary record.

### ***Enforceability of Garlock Restrictive Covenant***

Garlock's employment agreement contains a restrictive covenant identical to that of Ricciardi but is expressly governed by Pennsylvania law. Restrictive covenants in employment contracts "are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 917 (Pa. 2002). To be enforceable under Pennsylvania law, a restrictive covenant must be (1) "incident to an employment relationship between the parties;" (2) "reasonably necessary for the protection of the employer;" and (3) "reasonably limited in duration and geographic extent." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Hess*, 808 A.2d at 917).

> To be reasonably necessary for the protection of the employer, a covenant must be tailored to protect legitimate interests. Generally, interests that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills. Similarly, not allowing competitors to profit from an employee's "specialized training and skills" is a legitimate use of a covenant.

*Id.* at 235 (internal citations and quotations omitted). A restrictive covenant may not be used, however, to establish a competitive advantage for an employer. *Hess*, 808 A.2d at 920–21. ("If the covenant is inserted into the agreement for some other purpose, as for example, eliminating or

repressing competition or to keep the employee from competing so that the employer can gain an economic advantage, the covenant will not be enforced."). "The reasonableness of the temporal and geographic aspects of a restrictive covenant must be determined in light of the nature of the employer's interest sought to be protected." *Boldt Machinery & Tools, Inc. v. Wallace*, 366 A.2d 902, 907 (Pa. 1976). "[Pennsylvania c]ourts uphold agreements lacking geographic limits, or with very broad geographic limits, only where the employee's duties and customers were equally broad." *PharMethod, Inc. v. Caserta*, 382 F. App'x 214, 220 (3d Cir. 2010). "The determination of reasonableness is a factual one, requiring consideration of all the facts and circumstances, with the party claiming unreasonableness as a defense against enforcement of the covenant bearing the burden of proof." *WellSpan Health v. Bayliss*, 869 A.2d 990, 999 (Pa. Super. Ct. 2005); *see also Quaker Chem. Corp. v. Varga*, 509 F. Supp.2d 469, 476 (E.D. Pa. 2007) (placing the burden on the employee challenging reasonableness of restrictive covenant).

Here, the parties do not dispute that Garlock's restrictive covenant was ancillary to her employment and supported by consideration. Garlock argues, however, that the restriction is unreasonable because it extends to business, agents, and brokers with whom Garlock had no contact during her time with Scottish American. Notably, Plaintiff has not pointed to any case in which a court upheld, in the absence of a geographic or material-contact limitation, a post-employment restriction on an employee conducting any business, in any location, with any of the former employer's customers. Pennsylvania courts, however, have consistently held that restrictive covenants that extend to ***all*** of an employer's clients — and not just those with whom the former employee had contact during the course of the employee's employment with the employer — are overbroad. *See, e.g.*, *Diodato v. Wells Fargo Ins. Servcs, USA, Inc.*, 44 F. Supp. 3d 541, 570 (M.D. Pa. 2014); *Capsicum Group, LLC v. Rosenthal*, 2013 WL 6667822, at *10 (E.D.

Pa. Dec. 17, 2013); *see also Penn Mutual Life Ins., Co. v. Rotter*, 2018 WL 1453554, at *8 (N.D. Ill. Mar. 23, 2018) (applying Pennsylvania law).  Consistent with these decisions, this Court finds that the restrictive covenant in Garlock's employment agreement is overbroad in that it extends to all of Scottish American's business and relationships with agents and brokers regardless of whether Garlock had any contact with those agents or brokers while employed by Scottish American.

Similar to the New York law applied to Ricciardi's agreement, Pennsylvania law permits a court to modify, or blue pencil, a restrictive covenant so as to limit enforcement to those portions of the restrictions that are reasonably necessary for the protection of the employer, provided its terms are severable and the restrictions are not so gratuitously overbroad as to "indicate[ ] an intent to oppress the employee and/or to foster a monopoly." *Sidco Paper Co. v. Aaron*, 351 A.2d 250, 257 (Pa. 1976); *see also PharMethod*, 382 F. App'x at 220 ("When a covenant imposes restrictions broader than necessary to protect the employer, a court of equity may 'blue pencil' the agreement by granting enforcement that is limited to those portions of the restrictions which are reasonably necessary for the protection of the employer.").  Thus, "where a restrictive covenant is found to be overbroad and yet the employer is clearly entitled to some measure of protection from the acts of his former employee, the court may grant such protection by reforming the restrictive covenant and enforcing it as reformed." *Thermo–Guard, Inc. v. Cochran*, 596 A.2d 188, 194 n. 9 (Pa. Super. Ct. 1991).

Such modification, however, requires "an active and engaged inquiry aimed at ensuring that the end result is fair to both sides." *PharMethod*, 382 F. App'x at 220.  This inquiry is a "fact-intensive inquiry," and should include, *inter alia*, whether Garlock obtained any "specialized knowledge" of Scottish American's business techniques or had access to Plaintiff's protectable customer-specific information.  *Victaulic*, 499 F.3d at 237.  Neither party has presented any

evidence from which this Court could make this necessary determination. As such, this inquiry must also await further evidentiary development at trial.

### *The Parties' Contract Interpretation Dispute*

In their respective motions, the parties also disagree with respect to the proper interpretation of the scope of the restrictive covenants and whether Ricciardi and/or Garlock breached them. Specifically, as to the interpretation, the parties disagree as to whether the restrictive covenants as drafted (without consideration of any limitation or modification imposed by this Court) extend **only** to Ricciardi and Garlock's solicitation of, or contacts with, agents and/or brokers regarding "existing" or "active" policies and files. Because this determination may be unnecessary following the parties' presentation of the additional evidence described above and this Court's potential modification of the restrictive covenants, these issues will be reserved for trial.

## CONCLUSION

For the reasons set forth, this Court finds that the record is insufficient at this stage of litigation to determine whether the restrictive covenants at issue are enforceable as drafted or can be subject to equitable modification by the Court. Accordingly, the parties' cross-motions for summary judgment are denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.